IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA
CIVIL DIVISION

**MELANIE JEROZAL,**

    **Plaintiff,**

                              CASE NO:

v.

**UNIVERSAL CITY DEVELOPMENT**
**PARTNERS, LTD.**

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Melanie Jerozal, by and through undersigned counsel, brings this action against Defendant, Universal City Development Partners, Ltd., and in support of her claims states as follows:

### JURISDICTION AND VENUE

1. This is an action for damages in excess of $30,000, exclusive of interest, fees, and costs, and for declaratory relief, for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq., and the Florida Civil Rights Act of 1992, as amended ("FCRA"), Fla. Stat. Section 760.01 et seq.

2. Venue is proper in Orange County, because all of the events giving rise to these claims occurred in this County.

### PARTIES

3. Plaintiff is a resident of Orange County, Florida.

4. Defendant operates a security division for an amusement park in Orlando, in Orange County, Florida.

## GENERAL ALLEGATIONS

5. Plaintiff has satisfied all conditions precedent, or they have been waived.

6. Plaintiff has hired the undersigned attorneys and agreed to pay them a fee.

7. Plaintiff requests a jury trial for all issues so triable.

8. At all times material hereto, Plaintiff was an employee of Defendant within the meaning of Title VII and the FCRA.

9. At all times material hereto, Defendant employed fifteen (15) or more employees. Thus, Defendant is an "employer" within the meaning of Title VII and the FCRA, Fla. Stat. Section 760.02(7).

## FACTS

10. Plaintiff was employed by Defendant from July 2016 to November 2019 as a Paramedic.

11. Plaintiff is a female.

12. Thus, Plaintiff is a member of a protected class, and on account of her protected status, Plaintiff benefits from the protections of Title VII.

13. Plaintiff performed the job for which she was hired in a satisfactory manner.

14. In November 2018, Plaintiff was sexually harassed by a co-worker, Christopher Miller ("Miller"), who, along with his wife sent Plaintiff unwelcome text messages.

15. Miller sent Plaintiff unwanted and unprovoked text messages declaring his love for Plaintiff.

16. Miller's wife sent Plaintiff text messages insinuating Plaintiff's karma would be to die.

17. Plaintiff made it clear to Miller that she did not want any relationship with Miller.

18. Miller became physically aggressive towards Plaintiff, slamming things in front of her, and yelled at her in front of other co-workers.

19. Plaintiff reported the harassment to Gina Peterson, Health Service Supervisor, on or about April 17, 2019, but Defendant failed to take any remedial action other than having Plaintiff write a witness statement.

20. In or about June 2019, Miller asked Plaintiff for her address purportedly to purchase roadside hazard insurance for her. Plaintiff refused and told Miller she did not want it. When Plaintiff refused, Miller searched for Plaintiff's address online anyway, found it, and then read it out loud for everyone to hear.

21. For the second time, Plaintiff again informed supervisors, including Kim Goodman, Tim Murry, Henry Morales, and Eric Depew, all Health Service Supervisors, that she felt sexually harassed by Miller and requested to have her shift changed from Miller's shift.

22. In June 2019, Miller texted Plaintiff that, "[Michael] Wrobel pulled me outside today off the record. Your name came up. When you are back talking to me, you are going to want to hear what he said. In the meantime, all I can say is you are on a radar screen you don't want to be on. Be careful."

23. Miller continued being aggressive with Plaintiff at work and yelling at her that they needed to fix this and make it work.

24. In September 2019, a different co-worker informed Plaintiff that Miller was switching shifts to ensure he worked with Plaintiff and that is what you do "for someone you love." Defendant approved all of Miller's shift change requests so that he could be assigned with Plaintiff.

25. On or about September 25, 2019, for the third time, Plaintiff again informed supervisors, including Henry Morales again, of Miller's behavior and was only told to take her complaint to Human Resources.

26. On or about October 1, 2019, Plaintiff went to Human Resources, specifically Jennifer Cole, complaining of Miller's sexual harassment for the fourth time, and her complaints were supposedly documented by Defendant's Human Resources.

27. On or about October 18, 2019, Defendant's Human Resources told Plaintiff that the issue was over, there should be no other problems with Miller, and that Plaintiff should "get along" with Miller "play nice" because they had to work together.

28. However, on or about October 21, 2019, Miller again switched a shift with another team member in order to work with Plaintiff and the supervisors approved the shift change for him.

29. On October 30, 2019, Miller and Plaintiff were in a company vehicle picking up one of the supervisors from the garage when Miller, who was driving and solely in control of the vehicle, chose to go to the grocery store to pick up food for a department luncheon. Plaintiff did not want to stop at the grocery store and said so. Miller ignored Plaintiff and went anyway. Upon return, and after being told what happened, Defendant put Plaintiff on administrative leave without pay.

30. Miller, who had been in control of the vehicle and refused to return Plaintiff to work when she said she did not want to go along with him, was not placed on unpaid leave.

31. Thus, Plaintiff was subjected to sex discrimination on the basis of her sex.

32. Plaintiff complained about the sex discrimination to Defendant by reporting the sexual harassment to her supervisors on multiple occasions and to Defendant's Human Resources.

33. Defendant took no remedial action in response to Plaintiff's multiple complaints.

34. On or about November 1, 2019, only two weeks after Defendant's Human Resources told Plaintiff the issue was "over," Defendant, through Michael Wrobel, retaliated against Plaintiff for invoking her rights under Title VII by terminating Plaintiff's employment.

## COUNT I – TITLE VII VIOLATION
### (HARASSMENT)

35. Plaintiff realleges and readopts the allegations of paragraphs 1 through 34 of this Complaint, as though fully set forth herein.

36. Plaintiff is a member of a protected class under Title VII.

37. Plaintiff was subjected to unwelcome harassment on the basis of her sex, including being sent unwanted text messages from Miller and his wife, having her personal address read aloud at work when Miller insisted on buying things for Plaintiff that she did not want, having to continue working shifts with Miller after she requested not to, and having Miller react aggressively towards her throughout the work day.

38. The harassment suffered by Plaintiff was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment with Defendant, up to and including the termination of Plaintiff's employment.

39. Defendant knew or should have known of the unwelcome harassment suffered by Plaintiff, and failed to intervene or to take prompt and effective remedial action in response.

40. Defendant's actions were willful and done with malice.

41. Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

a) A jury trial on all issues so triable;

b) That process issue and that this Court take jurisdiction over the case;

c) An injunction restraining continued violation of Title VII by Defendant;

d) Compensation for lost wages, benefits, and other remuneration;

e) Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay;

f) Any other compensatory damages, including emotional distress, allowable at law;

g) Punitive damages;

h) Prejudgment interest on all monetary recovery obtained.

i) All costs and attorney's fees incurred in prosecuting these claims; and

j) For such further relief as this Court deems just and equitable.

## COUNT II – TITLE VII RETALIATION

42. Plaintiff realleges and readopts the allegations of paragraphs 1 through 34 of this Complaint, as though fully set forth herein.

43. Plaintiff is a member of a protected class under Title VII.

44. Plaintiff exercised or attempted to exercise her rights under Title VII, thereby engaging in protected activity under Title VII.

45. Defendant retaliated against Plaintiff for engaging in protected activity under Title VII by terminating Plaintiff.

46. Defendant's actions were willful and done with malice.

47. In terminating Plaintiff, Defendant took material adverse action against Plaintiff.

48. Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

a) A jury trial on all issues so triable;

b) That process issue and that this Court take jurisdiction over the case;

c) That this Court enter a declaratory judgment, stating that Defendant retaliated against Plaintiff for exercising her rights under Title VII;

d) That this Court enter an injunction restraining continued violation of Title VII by Defendant;

e) Compensation for lost wages, benefits, and other remuneration;

f) Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, with back pay plus interest, pension rights, seniority rights, and all fringe benefits;

g) Front pay;

h) Any other compensatory damages, including emotional distress, allowable at law;

i) Punitive damages;

j) Prejudgment interest on all monetary recovery obtained.

k) All costs and attorney's fees incurred in prosecuting these claims; and

l) For such further relief as this Court deems just and equitable.

## COUNT III – FCRA VIOLATION
### (HARASSMENT)

49. Plaintiff realleges and readopts the allegations of paragraphs 1 through 34 of this Complaint, as though fully set forth herein.

50. Plaintiff is a member of a protected class under the FCRA.

51. Plaintiff was subjected to unwelcome harassment on the basis of her sex, including being sent unwanted text messages from Miller and his wife, having her personal address read aloud at work when Miller insisted on buying things for Plaintiff that she did not want, having to continue working shifts with Miller after she requested not to, and having Miller react aggressively towards her throughout the work day.

52. The harassment suffered by Plaintiff was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment with Defendant, including but not limited to termination of Plaintiff's employment.

53. In response, Defendant failed to intervene or take prompt and effective remedial action.

54. Defendant's actions were willful and done with malice.

55. Plaintiff was injured due to Defendant's violations of the FCRA, for which Plaintiff is entitled to relief.

**WHEREFORE**, Plaintiff demands:

k) A jury trial on all issues so triable;

l) That process issue and that this Court take jurisdiction over the case;

m) Compensation for lost wages, benefits, and other remuneration;

n) Reinstatement of Plaintiff to a position comparable to prior position, or in the alternative, front pay;

    o)    Any other compensatory damages, including emotional distress, allowable at law;

    p)    Punitive damages;

    q)    Prejudgment interest on all monetary recovery obtained.

    r)    All costs and attorney's fees incurred in prosecuting these claims; and

    s)    For such further relief as this Court deems just and equitable.

## COUNT IV – FCRA RETALIATION

56.    Plaintiff realleges and readopts the allegations of paragraphs 1 through 34 of this Complaint, as though fully set forth herein.

57.    Plaintiff is a member of a protected class under the FCRA.

58.    Plaintiff engaged in protected activity under the FCRA by reporting the sexual harassment multiple times to multiple supervisors and Defendant's Human Resources.

59.    Defendant retaliated against Plaintiff for engaging in protected activity under the FCRA by terminating her employment.

60.    Defendant's actions were willful and done with malice.

61.    By terminating her employment, Defendant took material adverse action against Plaintiff.

62.    Plaintiff was injured due to Defendant's violations of the FCRA, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

    m)    A jury trial on all issues so triable;

    n)    That process issue and that this Court take jurisdiction over the case;

o) That this Court enter a declaratory judgment, stating that Defendant interfered with Plaintiff's rights under the FCRA;

p) Compensation for lost wages, benefits, and other remuneration;

q) Reinstatement of Plaintiff to a position comparable to prior position, with back pay plus interest, pension rights, and all benefits;

r) Front pay;

s) Any other compensatory damages, including emotional distress, allowable at law;

t) Punitive damages;

u) Prejudgment interest on all monetary recovery obtained.

v) All costs and attorney's fees incurred in prosecuting these claims; and

w) For such further relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues so triable.

Dated this 18th day of November, 2020.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 0037061
Direct Dial: 813-337-7992
**AMANDA E. HEYSTEK**
Florida Bar Number: 0285020
Direct Dial: 813-379-2560
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com

10

                                                Email: aheystek@wfclaw.com
                                                Email: aketelsen@wfclaw.com
                                                **Attorneys for Plaintiff**